22CA0843 Coomer v Giuliani 11-14-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0843
City and County of Denver District Court No. 20CV34319
Honorable Marie Avery Moses, Judge

---

Eric Coomer, Ph.D.,

Plaintiff-Appellee,

v.

Rudolph Giuliani,

Defendant-Appellant.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHOCK
Navarro and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

---

Cain & Skarnulis PLLC, Charles J. Cain, Bradley A. Kloewer, Salida, Colorado;
RechtKornfeld PC, Thomas M. Rogers III, Mark Grueskin, Andrew E. Ho,
Denver, Colorado, for Plaintiff-Appellee

Gessler Blue LLC, Scott E. Gessler, Geoffrey N. Blue, Greenwood Village,
Colorado, for Defendant-Appellant

¶ 1 Defendant, Rudolph Giuliani, appeals the order denying his anti-SLAPP[1] motion to dismiss the complaint filed by plaintiff, Eric Coomer. Consistent with our opinion in *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35 (*Coomer I*), we (1) affirm the denial of the motion to dismiss the claims for defamation and intentional infliction of emotional distress and the request for injunctive relief; (2) reverse the denial of the motion to dismiss the civil conspiracy claim; and (3) remand for the district court to consider Giuliani's request for attorney fees and costs and for further proceedings.

## I. Background

¶ 2 Coomer is the former Director of Product Security and Strategy at Dominion Voting Systems, Inc. (Dominion), a company that provided voting technology and support services in connection with the 2020 presidential election. He brought this lawsuit against Giuliani and several other defendants based on statements they made about him in questioning the validity of the election results.

---

[1] "SLAPP" stands for "strategic lawsuit against public participation." *Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 1 n.1. The anti-SLAPP statute allows for a special motion to dismiss any cause of action arising from an act in furtherance of a person's constitutional right of petition or free speech. § 13-20-1101(3)(a), C.R.S. 2024.

¶ 3　　We addressed Coomer's claims against the other defendants in *Coomer I.* In doing so, we considered the substance of Giuliani's statements because he was alleged to have made those statements as an agent of one of the other defendants, Donald J. Trump for President, Inc. (the Trump Campaign). *See Coomer I,* ¶ 34 n.3; *see also id.* at ¶¶ 34-36, 108-09, 185-95. But we did not address Giuliani's appeal because the action was stayed as to him due to his bankruptcy filing. *See id.* at ¶ 6 n.2. That stay has now been lifted, meaning that Giuliani's appeal may now proceed.

¶ 4　　The facts underlying Coomer's claims in this case are set forth in *Coomer I,* ¶¶ 7-40, and we will not repeat them at length. In short, Joe Oltmann, the co-host of the Conservative Daily podcast, claimed to have infiltrated an "Antifa" conference call in September 2020, where he heard someone identified as "Eric . . . the Dominion guy" say, "Don't worry about the election. Trump is not going to win. I made effing sure of that." Oltmann explained that he had determined the person was Coomer, and he accused Coomer of "interfering with the election." Oltmann repeated this account several times on his own podcasts and in other media. The other defendants made similar statements in sharing Oltmann's account.

¶ 5     Coomer's claims against Giuliani are based on statements Giuliani made at a November 19, 2020, press conference, where he spoke on behalf of the Trump Campaign. Giuliani began the press conference by introducing himself as a representative of the Trump Campaign's legal team. He then explained that the purpose of the press conference was to present "the evidence that we've collected over the last . . . two weeks" regarding allegations of election fraud.

¶ 6     After running through a litany of such allegations, Giuliani asked Sidney Powell, another attorney he had introduced as a member of the legal team, to describe what he called "another totally outrageous situation." Powell spoke generally about Dominion's role in the election and then turned to Coomer:

> Eric Coomer . . . is on the web as being recorded in a conversation with Antifa members, saying that he had the election rigged for Mr. Biden. Nothing to worry about here. And he was going to — they were going to "F" Trump. His social media is filled with hatred for the President, and for the United States of America as a whole . . . .

¶ 7     Later in the press conference, Giuliani returned to that account:

> [B]y the way, the Coomer character, who is close to Antifa, took off all of his social media.

Ah-ah, but we kept it, we've got it. The man is a vicious, vicious man . . . and he specifically says that they're going to fix this election. . . .

This is real. It is not made up. [T]here's nobody here that engages in fantasies. I've tried a hundred cases. I've prosecuted some of the most dangerous criminals in the world. I know crimes. I can smell them. You don't have to smell this one. I can prove it to you eighteen different ways.

¶ 8 At the time of the November 19 press conference, the Trump Campaign had filed lawsuits in Pennsylvania and Michigan challenging the election results in those states. Neither of those lawsuits referred to Coomer, and only the Michigan case involved any allegations about Dominion. In the days and weeks after the press conference, Powell filed four more lawsuits — in Michigan, Georgia, Wisconsin, and Arizona — on behalf of individual plaintiffs.

¶ 9 Coomer sued Giuliani (and the other defendants), asserting claims for defamation, intentional infliction of emotional distress, and civil conspiracy, and seeking damages and injunctive relief, based on Giuliani's statements at the November 19 press conference. Coomer alleged that Giuliani's statements about him were false and defamatory insofar as they asserted that Coomer "suggest[ed] he would rig the election" and "took actions to rig the

4

election." In his complaint, Coomer denied (1) having any knowledge of the alleged Antifa conference call; (2) participating in such a call; (3) making the statements attributed to him; or (4) taking any action to subvert the presidential election results.

¶ 10 Giuliani moved to dismiss Coomer's complaint under section 13-20-1101(3)(a), C.R.S. 2024. He argued that (1) his statements were protected by the litigation privilege; (2) Coomer could not show that Giuliani made the statements with actual malice; (3) Coomer could not satisfy the elements of his claims for intentional infliction of emotional distress and civil conspiracy; and (4) Coomer's request for injunctive relief was not a separately cognizable claim. In support, Giuliani submitted a declaration, attesting that he believed the statements he made at the press conference regarding Coomer were true and that the purpose of the press conference was to "announce an opening statement" as to what the Trump Campaign's legal team expected evidence to show in litigation.

¶ 11 Coomer filed an omnibus response to all defendants' special motions to dismiss and attached his own declaration, attesting that he was not on the alleged conference call in September 2020, did

not make the statement the defendants had attributed to him, and did not take any action to subvert the presidential election.

¶ 12　　After a two-day hearing, the district court denied all defendants' motions, including Giuliani's, in their entirety.  It concluded that the anti-SLAPP statute applied but that Coomer had established a reasonable likelihood of prevailing on his claims.

## II.　Applicable Law and Standard of Review

¶ 13　　We review an order denying an anti-SLAPP special motion to dismiss de novo, applying the same two-step analysis as the district court.  *Coomer I*, ¶¶ 62, 64.  First, we must determine whether the defendant has made a threshold showing that the anti-SLAPP statute applies — "that is, whether the claims arise from the defendant's exercise of free speech or right to petition in connection with a public issue."  *Id.* at ¶ 62 (citation omitted).  Second, if the defendant meets that threshold, the burden shifts to the plaintiff to establish a reasonable likelihood of prevailing on the claims.  *Id.*

¶ 14　　At the second step, we must consider the pleadings and supporting and opposing affidavits to determine "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment."  *Id.* at

¶ 63 (citation omitted). In doing so, we must accept the plaintiff's evidence as true and assess the defendant's evidence "only to determine if it defeats the plaintiff's claim as a matter of law." *Id.* at ¶¶ 66, 72 (citation omitted). We do not weigh the evidence or resolve factual conflicts. *Id.* at ¶ 63. Nor may we (or the district court) make credibility determinations. *Id.* at ¶ 73. Instead, our role is limited to determining whether the plaintiff has met the "threshold burden" required for the case to proceed. *Id.* at ¶ 76.

¶ 15 Because Coomer does not dispute the district court's conclusion that the anti-SLAPP statute applies, we consider only whether Coomer has met his prima facie burden of establishing a reasonable likelihood of prevailing on his claims. *See id.* at ¶ 83.

### III. Analysis

¶ 16 As noted above, we did not in *Coomer I* consider Coomer's claims against Giuliani personally. *See id.* at ¶ 6 n.2. But because Coomer's claims against the Trump Campaign are based in part on Giuliani's statements, we did analyze Giuliani's *statements* in assessing the viability of Coomer's claims against the Trump Campaign. Giuliani makes essentially the same arguments on appeal that the Trump Campaign (and other defendants) did.

7

¶ 17    Thus, many of our conclusions in *Coomer I*, which we choose to follow, are equally pertinent to the issues Giuliani raises in this appeal.  While we repeat and summarize certain aspects of those conclusions as they relate to Giuliani's arguments, we incorporate by reference the more fulsome analysis in *Coomer I* where it applies.

## A.    Defamation

¶ 18    Giuliani argues that Coomer did not present clear and convincing evidence that Giuliani's statements were false or that Giuliani acted with actual malice.  He asserts that the district court erred by substituting its own interpretation of Giuliani's statements for what he actually said.  And he contends that he did not act with actual malice because he believed his statements were true.

¶ 19    Initially, to the extent Giuliani suggests that Coomer had to prove falsity and actual malice by clear and convincing evidence in response to the motion to dismiss, he is incorrect.  *Id.* at ¶ 77.  That is the burden Coomer must meet at trial.  *Id.* at ¶ 87.  At this stage of the case, Coomer need only show a reasonable probability that he *will* be able to meet his burden of proof by clear and convincing evidence at trial.  *Id.*  We conclude that Coomer has made this prima facie showing as to his defamation claim against Giuliani.

### 1. Legal Standard

¶ 20 To prevail on a claim of defamation, a plaintiff generally must prove four elements: (1) a defamatory statement concerning the plaintiff; (2) publication; (3) fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special damages or the existence of special damages. *Id.* at ¶ 85.

¶ 21 But when the statement involves a matter of public concern, as in this case, three heightened standards apply. *Id.* at ¶ 86. The plaintiff must prove (1) the falsity of the statement by clear and convincing evidence; (2) actual malice of the speaker by clear and convincing evidence; and (3) actual damages. *Id.* Clear and convincing evidence is "evidence that is highly probable and free from serious or substantial doubt." *Id.* at ¶ 87 (citation omitted).

### 2. Falsity

¶ 22 Giuliani does not dispute that he said Coomer *said* he was going to "fix the election." But he asserts that the district court erred by concluding that "the substance of the statements" conveyed that Coomer "did in fact subvert the election." We rejected this argument in *Coomer I,* ¶ 109, and we reach the same

9

conclusion here, viewing the statements "in context to determine how a reasonable person would have understood them." *Id.* at ¶ 90.

¶ 23     Giuliani began the press conference by explaining that its purpose was to present evidence of alleged election fraud. After Powell relayed the account of Coomer "saying that he had the election rigged for Mr. Biden," Giuliani highlighted that account, repeating that Coomer "specifically says that they're going to fix the election." He then followed that statement by asserting that there had been a "crime" and that he could "prove it . . . eighteen different ways." Taken in context, this statement can reasonably be understood as an assertion that Coomer not only *said* he was going to fix the election but actually took steps to do so. *See id.* at ¶ 109.

¶ 24     Accepting Coomer's evidence as true, he has shown a reasonable likelihood of proving by clear and convincing evidence that these statements were false. *See id.* at ¶¶ 137-145. Most importantly, in his declaration, Coomer attested that he (1) did not participate in the alleged conference call; (2) did not say he could rig the election; and (3) did not take any action to subvert the election. That declaration, if true, could itself provide clear and convincing evidence that Giuliani's statements were false. *See id.* at ¶ 139.

Coomer also presented affidavits from two other individuals corroborating his denial. *Id.* at ¶ 140. And he identified several apparent inconsistencies or weaknesses in Oltmann's account of the call on which Giuliani's statements were based. *Id.* at ¶ 141.

¶ 25 Like the other defendants in *Coomer I,* Giuliani cites other evidence that he contends could support a jury finding that the conference call occurred and that Coomer made the statements Giuliani attributed to him. And he discounts Coomer's declaration, asserting that Coomer offered no alibi for the time of the call[2] and presented no evidence that *a* call did not happen. But as we explained in *Coomer I,* we may not weigh the evidence or decide which evidence we find more persuasive. *Id.* at ¶¶ 143-44.

¶ 26 The question is not, as Giuliani suggests, whether a reasonable jury could find Giuliani's statements were true. *See id.* at ¶ 143. The question is whether, accepting Coomer's evidence as true, there is a reasonable likelihood that a jury could find by clear and convincing evidence that Giuliani's statements were false. *Id.* For the reasons above and in *Coomer I,* we conclude that it could.

---

[2] Neither Oltmann nor Giuliani identified a specific time of the alleged call, and even the claimed date of the call varied over time.

### 3. Actual Malice

¶ 27    Giuliani contends that Coomer did not establish a reasonable probability of proving actual malice by clear and convincing evidence because Giuliani reasonably believed his statements were true. For the reasons in *Coomer I*, ¶¶ 160-66, 174-79, we disagree.

¶ 28    Actual malice means that the speaker made the statement "with actual knowledge that it was false or with reckless disregard for whether it was true." *Id.* at ¶ 147 (citation omitted). A speaker acts with reckless disregard if the speaker "entertains serious doubts as to the truth of the statement or acts with a high degree of awareness of its probable falsity." *Id.* (citation omitted).

¶ 29    It is undisputed that Giuliani's statements about what Coomer said were based entirely on Oltmann's account of the alleged September 2020 conference call. Giuliani asserts that his reliance on Oltmann — someone he calls a "reliable source with first-hand knowledge" — precludes a finding of actual malice. He also asserts that he conducted some investigation into Oltmann's allegations about Coomer and found no reason to disbelieve them, particularly when other media sources were also reporting those allegations.

¶ 30    We rejected effectively the same arguments in *Coomer I.  See id.* at ¶¶ 161-66, 171-72, 174-180.  As we explained there, even if Giuliani genuinely believed Oltmann's account of the conference call, or the media reports of that account, "that account itself could reasonably support a finding that [Giuliani] entertained serious doubts" as to whether *Coomer* made the comment.  *Id.* at ¶ 162.  In particular, Oltmann's attribution of the comment to Coomer was based entirely on (1) an anonymous person's identification of another anonymous speaker as "Eric, the Dominion guy"; (2) Coomer's position with Dominion; and (3) Coomer's social media posts in opposition to President Trump.  *Id.* at ¶¶ 163-64.  Given the limited substantiation and the magnitude of the claim, there is a reasonable likelihood that a jury could find that Giuliani, at a minimum, entertained serious doubts as to its truth.  *Id.* at ¶ 164.

¶ 31    A jury could also reasonably find that Giuliani acted with actual malice in suggesting that Coomer had committed a "crime" by in fact interfering with the election.  *See id.* at ¶ 165.  Oltmann did not claim to have personal knowledge that Coomer had done so.  Nor does Giuliani advance any theory as to *how* he believed Coomer had personally manipulated the election results.  *Id.*  And by the

time Giuliani made his statements, the government agency responsible for election security had rejected any claim that the election had been compromised. *Id.* As with the other defendants, there is a reasonable likelihood that a jury could find Giuliani "recklessly disregarded the truth by asserting such an explosive and improbable claim without any evidence to support it." *Id.*

¶ 32 We agree with Giuliani that actual malice is subjective and that the focus must be on his state of mind when he made the statements in question. *See id.* at ¶¶ 148, 179. And thus, the district court erred by relying on information that post-dated those statements. *Id.* at ¶ 177. But, as with the other defendants, we reject Giuliani's contention that the prevalence of election fraud allegations generally precludes a finding of actual malice as to his claim that *Coomer* interfered with the election. *See id.* at ¶ 179.

¶ 33 We likewise reject Giuliani's argument that his review of Coomer's social media posts and investigation of Coomer necessarily establish that he sincerely believed his statements to be true. *See id.* at ¶¶ 174-75. Like the similar arguments raised by the other defendants in *Coomer I*, these are facts Giuliani may present at trial. *Id.* at ¶ 175. But for purposes of Giuliani's anti-

SLAPP motion, it is enough that Coomer has presented evidence that is reasonably likely to support the finding that Giuliani acted with actual malice when he made his statements. *Id.*

### 4. Litigation Privilege

¶ 34     Giuliani next contends that his statements at the press conference were protected by the litigation privilege because they were related to the ongoing lawsuit in Michigan and other lawsuits Giuliani anticipated filing in good faith. We rejected this argument in *Coomer I,* concluding that Giuliani's statements were not protected by the litigation privilege. *Id.* at ¶¶ 185-95. Giuliani raises no argument that would cause us to revisit that conclusion.

¶ 35     In particular, for the litigation privilege to apply, the statement must *both* (1) have some relation to the subject matter of the litigation (existing or contemplated in good faith) *and* (2) be made in furtherance of the objective of the litigation. *Id.* at ¶ 187. And as we held in *Coomer I,* while Giuliani's statements satisfied the first prong of this analysis, they did not satisfy the second.

¶ 36     In his briefs, Giuliani did not offer any explanation as to how his statements about Coomer — allegations that did not appear in the Michigan complaint — furthered the objective of the existing or

15

contemplated litigation. *Id.* at ¶¶ 191-92. Indeed, Giuliani did not address the second prong of the litigation privilege at all, focusing only on whether his statements "related to" the litigation.[3]

¶ 37　　At oral argument, Giuliani argued for the first time that his statements about Coomer were in furtherance of the litigation because their purpose was to find witnesses for future potential lawsuits. We note that no lawsuit was ever filed by Giuliani or the Trump Campaign that included any allegations about Coomer. But even if such litigation was contemplated in good faith, Giuliani's counsel conceded at oral argument that the argument about finding witnesses was not raised in Giuliani's briefs. Nor does the record contain any assertion *by Giuliani* that this was his purpose in making the statements. We will not consider an argument first made at oral argument, particularly one that lacks record support. *See Rucker v. Fed. Nat'l Mortg. Ass'n*, 2016 COA 114, ¶ 35.

---

[3] As we explained in *Coomer I*, we agree with Giuliani that the district court was incorrect in suggesting that the litigation privilege "can be lost by a finding of actual malice." *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 186 n.16. But because the litigation privilege does not apply, that error is harmless. *Id.*

### B. Intentional Infliction of Emotional Distress

¶ 38    Giuliani's sole argument with respect to Coomer's claim for intentional infliction of emotional distress is that Coomer failed to meet his burden of showing actual malice. Because we have concluded that Coomer has established a reasonable likelihood of proving by clear and convincing evidence that Giuliani acted with actual malice, we reject this argument. *See Coomer I*, ¶ 202.

¶ 39    To the extent Giuliani asserts that Coomer also failed to satisfy his burden with respect to the element of extreme and outrageous conduct, we disagree for the reasons stated in *Coomer I*, ¶¶ 203-05. Specifically, accepting Coomer's evidence as true, there is a reasonable likelihood that a jury could find that Giuliani's accusations were sufficiently outrageous to sustain the claim. *Id.*

### C. Conspiracy

¶ 40    Giuliani asserts that the district court erred by denying his motion to dismiss the conspiracy claim because Coomer failed to present any evidence of an agreement to defame him. *See Coomer I*, ¶ 208 (listing elements of civil conspiracy, including "a meeting of the minds on the object or course of action"). On this point, consistent with our conclusion in *Coomer I*, we agree with Giuliani.

17

¶ 41    As we explained in *Coomer I*, it was incumbent on Coomer to present evidence of an agreement, direct or circumstantial, between Giuliani and at least one other person to make the defamatory statements. *Id.* at ¶ 209.  He failed to do so. *Id.* at ¶¶ 210-12.  To the extent there was coordination among Giuliani, Powell, and other members of the Trump Campaign, "[a] corporation and its agents acting on its behalf 'do not constitute the "two or more persons" required for a civil conspiracy.'" *Id.* at ¶ 213 (citation omitted).

¶ 42    Thus, we conclude that Coomer has failed to meet his burden of establishing a reasonable likelihood of prevailing on his civil conspiracy claim against Giuliani.  That claim must be dismissed.

### D.    Injunction

¶ 43    Finally, Giuliani argues, and Coomer agrees, that the district court's review of Coomer's request for injunctive relief was premature.  We agree.  An injunction is not a substantive claim that is subject to an anti-SLAPP motion to dismiss. *Coomer I*, ¶ 218.  It is a remedy for a claim upon which a claimant prevails. *Id.*

¶ 44    We therefore agree with Giuliani that the district court erred by addressing the merits of Coomer's request for injunctive relief.

But we affirm the denial of Giuliani's motion to dismiss that request because, procedurally, it could not be dismissed. *See id.* at ¶ 219.

## IV. Attorney Fees

¶ 45 Giuliani requests his attorney fees and costs as a "prevailing defendant" under section 13-20-1101(4)(a). Whether a party prevailed on an anti-SLAPP motion — and to what extent any partial success warrants an award of fees — is a determination within the broad discretion of the district court. *Coomer I*, ¶ 221.

¶ 46 Thus, because we have reversed one aspect of the district court's ruling, we remand the case to the district court to determine whether Giuliani is a partially prevailing defendant; the extent to which his partial appellate success, if any, warrants an award of appellate fees; and the reasonableness of those fees. *Id.* at ¶ 224.

## V. Disposition

¶ 47 We reverse the district court's denial of Giuliani's motion to dismiss the conspiracy claim. We affirm the district court's order as to Giuliani in all other respects. We remand the case to the district court for determination of Giuliani's request for attorney fees and costs, and for further proceedings consistent with this opinion.

JUDGE NAVARRO and JUDGE KUHN concur.